IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSE CRUZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 14-cv-7935 |
| ) | |
| COOK COUNTY SHERIFF'S OFFICE, ) | Judge Robert M. Dow, Jr. |
| DR. HOWARD, DR. GOMEZ, C/O ) | |
| McMUNES, CERMAK HEALTH ) | |
| SERVICES, NURSE DUNMARES, ) | |
| NURSE PULVIRENTI, UNKNOWN ) | |
| COUNTY CERMAK HEALTH ) | |
| PERSONNEL, and COOK COUNTY, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jose Cruz ("Plaintiff") brings suit against the Cook County Sheriff's Office, Dr. Howard, Dr. Gomez, C/O McMunes, Cermak Health Services, Nurse Dunmares, Nurse Pulvirenti, Unknown County Cermak Health Personnel, and Cook County, Illinois for allegedly ignoring his serious medical needs during his incarceration in the Cook County Department of Corrections ("CCDOC"). Defendants Cook County (through Sheriff Tom Dart), Dr. Gomez, and the Cook County Sheriff's Office have waived service of the complaint (see [21], [22], [24]) and Dr. Howard has waived any defenses to the insufficiency of service by filing a responsive pleading. See [36]; see also *Shalash v. Mukasey*, 576 F. Supp. 2d 902, 906 (N.D. Ill. 2008). In this order, the Court will refer to these four defendants collectively as "Defendants."

Currently before the Court is Defendants' motion [36] to dismiss Plaintiff's Third Amended Complaint [33].[1] For the reasons set forth below, the Court denies Defendants' motion

---

[1] This is actually the second amended complaint that Plaintiff has filed, but the Court will refer to it as the Third Amended Complaint for the sake of consistency. See [14] (original complaint); [18] (first amended

[36]. In addition, the Court orders Plaintiff's counsel to serve the Third Amended Complaint on (or seek waivers of service from) the remaining defendants (C/O McMunes, Cermak Health Services, Nurse Dunmares, Nurse Pulvirenti, and Unknown County Cermak Health Personnel) no later than October 31, 2016, or the claims against those defendants will be dismissed without prejudice. See Fed. R. Civ. P. 4(m). This matter is set for status on November 15, 2016 at 9:15 a.m. at 9:15 a.m.

I. **Background[2]**

Plaintiff was diagnosed with Attention Deficit Disorder, depression, and hyperactivity in his early childhood. Plaintiff has been hospitalized for his medical condition numerous times over his lifetime. Psychiatrists have noted that Plaintiff's mental state is unstable—resulting in lack of concentration, aggressive behavior, and suicidal tendencies—and have concluded that Plaintiff needs psychological treatment and medication to ensure his well-being.

Plaintiff has been incarcerated in the CCDOC several times. In July 2010, while incarcerated awaiting trial, Plaintiff requested medical treatment after feeling the onset of a mental episode. After filing several grievances, Plaintiff was eventually evaluated, diagnosed as mentally ill and suffering from attention deficient hyperactivity disorder ("ADHD"), and proscribed with atomoxetine, brand name "Straterra." However, CCDOC's delivery of the Straterra was problematic and Plaintiff's attorney had to seek the intervention of the court to obtain proper treatment for Plaintiff. Plaintiff attempted to kill himself several times while in CCDOC custody, before he was eventually acquitted and released. Some of Plaintiff's suicide attempts were documented. Plaintiff and CCDOC settled a lawsuit (Case No. 11-cv-630)

---

complaint); [32] (docket entry authorizing filing of second amended complaint); [33] (third amended complaint).

[2] For purposes of this order, the Court assumes that all well-pled allegations in Plaintiff's Third Amended Complaint [33] are true.

concerning CCDOC's alleged failure to provide medical treatment to Plaintiff from 2010 to 2011.

The instant lawsuit concerns Plaintiff's incarceration in CCDOC in 2014. On January 14, 2014, Plaintiff was arrested for trespass, resisting arrest, and damage to a state vehicle. On January 15, 2014, he was incarcerated. He was promptly prescribed a daily dose of 50 milligrams of Straterra to treat his ADHD.

Plaintiff bonded out of jail. He violated the conditions of his bond and, on April 1, 2014, was again incarcerated at CCDOC.[3] Plaintiff did not receive any medication for approximately two months following his re-incarceration. Finally, Dr. Howard treated Plaintiff and prescribed him 25 milligrams a day of Straterra (half the dose he was prescribed in January). According to Plaintiff, Dr. Howard knew or should of known from his background, education, and experience that the 25 milligram dose was insufficient to be therapeutic for Plaintiff, but "hoped that the small dose . . . would alleviate Defendant Cermak's frequent shortage of the medication and silence Plaintiff's complaints." [33] at 4-5.

On May 30, 2014, Plaintiff filed a grievance challenging Defendants' medical indifference and refusal to provide his medication. The grievance and appeal therefrom were denied. On June 25, 2014, Plaintiff went to the dispensary to obtain his medication. He spoke with Nurse Pulvirenti "about the lack of medicine and the adverse consequence to his mental state if he's not medicated," but "Plaintiff again did not receive his medication." [33] at 5. Plaintiff filed a grievance protesting Nurse Pulvirenti's indifference and refusal to provide his medication. The grievance and appeal therefrom were denied.

---

[3] The Third Amended Complaint actually alleges that Plaintiff was re-incarcerated on April 1, 2015, but the Court assumes that Plaintiff meant April 1, 2014 given that all of the surrounding paragraphs refer to events that occurred in 2014 and Plaintiff filed his original complaint in 2014. See [33] at 4, ¶ 30.

On July 8, 2014, Plaintiff used a CCDOC health request form to request a psychiatric evaluation. Plaintiff did not receive an evaluation. He filed grievances in protest on July 9, 2014, July 25, 2014, and subsequent dates, and all of his grievances were denied.

On August 5, 2014, Plaintiff spoke to Dr. Howard about "the deficiencies in his medication treatment and dosages." [33] at 6. "Dr. Howard purportedly prescribed Plaintiff medication increasing the dosage to fifty (50) mg of Straterra," but "Defendants indifferently and without just cause ignored or failed to properly administer Dr. Howard's prescription." [33] at 5-6. On August 6, 2014, Plaintiff filed another grievance, which was denied. Plaintiff did not receive the appropriate dosage of his medication.

On August 11, 2014, Plaintiff notified C/O McMunes that "he was feeling the ill effects of his lack [of] medication and that he needed help in obtaining his medicine." [33] at 6. C/O McMunes refused to assist Plaintiff and instead ordered Plaintiff to lock himself in his cell. Plaintiff refused and was "handcuffed and escorted . . . off to the jail tier" as he "begged and pleaded to see a mental health care worker." *Id.*

Eventually, Plaintiff spoke with Dr. Gomez. Plaintiff "notified defendant Gomez that he was feeling suicidal along with other ill effects associated with his lack of medication" and "pleaded with defendant Gomez that he needed help in obtaining his psychotic medication." [33] at 6. Dr. Gomez refused to assist Plaintiff, failed to call other medical personnel, failed to escort Plaintiff to a medical facility within the jail, and failed to adequately document Plaintiff's complaints so that others could assist Plaintiff when Dr. Gomez was off duty.

On August 12, 2014, "Plaintiff started experiencing difficulties in concentrating and began having suicidal thoughts due to lack of medicine." [33] at 7. He told C/O McMunes "that he was feeling ill effects due to his lack of medication and that he was experiencing difficulties

in concentrating and having suicidal thoughts." *Id.* McMunes told Plaintiff, "kill yourself, faggot," and prevented Plaintiff from making a "comfort call" to his wife on the telephone. *Id.* Plaintiff went into his cell and attempted to hang himself with bed sheets. Plaintiff was transported by ambulance to the hospital.

Plaintiff's Third Amended Complaint also contains allegations concerning CCDOC's medical procedures. First, Plaintiff alleges that the initial medical screening is done in a noisy, chaotic, crowded area where inmates are handcuffed and in close proximity of other inmates, which results in a lack of privacy and compromises the quality of information received. Second, Plaintiff alleges that nurses are denied access to inmates' records, which prevents proper diagnosis and treatment. Third, Plaintiff alleges that CCDOC inmates must persuade guards, who have no medical training, that they need medical attention. Fourth, Plaintiff alleges that CCDOC's procedures for following up on inmates' complaints are inconsistent, random, and well below medical standards for record-keeping, resulting in deliberate indifference to inmates' serious medical needs.

Plaintiff's Third Amended Complaint contains six claims, which are brought against the defendants in their official and individual capacities. See [33] at 3, 8-11. Counts I through IV are brought pursuant to 42 U.S.C. § 1983. Count I alleges that all of the defendants violated Plaintiff's rights under the Fourteenth Amendment of the U.S. Constitution by acting with deliberate indifference to his known serious medical needs. Count II alleges that all of the defendants violated his substantive due process rights by constricting his access to medical services and then denying and/or inadequately administering his medication. Count III alleges that all of the defendants unreasonable seized him, in violation of the Fourth Amendment, by denying or inadequately administering his medication prior to a probable cause hearing. Count

IV is a *Monell* claim against Cook County and the Sheriff of Cook County, Tom Dart. Plaintiff alleges that the defendants acted pursuant to one or more of the following interrelated, informal policies, practices, or customs that allowed and encouraged deliberate indifference to inmates' medical needs: (1) providing inadequate health assessments and failing to take individual health histories; (2) failing to keep proper records; (3) failing to provide adequate staffing and training; (4) denying inmates meaningful access to health professionals; and (5) providing inadequate acute and chronic care to inmates. Count V alleges that Defendants engaged in the intentional infliction of emotional distress ("IIED") by ignoring Plaintiff's serious medical needs and intending that Plaintiff would suffer injury. Finally, Count VI is a statutory indemnification claim against Cook County pursuant to 745 ILCS 10/9-102.

Currently before the Court is Defendants' motion to dismiss Counts I through V of the Third Amended Complaint.

## II.     Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement

need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555) (ellipsis in original). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. The Court reads and assesses the plausibility of a party's complaint as a whole. See *Atkins v. City of Chicago,* 631 F.3d 823, 832 (7th Cir. 2011).

### III. Analysis

#### A. Dr. Gomez

Defendants argue that the Third Amended Complaint does not state any claims against Dr. Gomez because the allegations that Dr. Gomez failed to escort Plaintiff to CCDOC's medical facility or to document his complaints "do not rise to the level of stating a constitutional violation." [36] at 3.

The Court concludes that Defendants are not entitled to dismissal based on this undeveloped and unsupported argument. The Eighth Amendment's proscription against cruel and unusual punishment "safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Roe v. Elyea,* 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)). "Accordingly, 'deliberate indifference to serious medical needs' of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Roe,* 631 F.3d at 857 (quoting *Estelle,* 429 U.S. at 104). "Although the Eighth Amendment applies only to convicted persons, pretrial detainees . . . are entitled to the same basic protections under the Fourteenth Amendment's due process clause," and the Seventh Circuit applies "the same legal standards to

7

deliberate indifference claims brought under either the Eighth or Fourteenth Amendment." *Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010).

A deliberate-indifference claim consists of both an objective and a subjective element. See *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). The plaintiff must be able to establish both (1) that he suffered an objectively serious medical condition and (2) that the defendant acted with deliberate indifference to that condition. *Id.* "Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm to the prisoner exists, but the defendant disregards that risk." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). "[A] medical professional's erroneous treatment decision can lead to deliberate indifference liability if the decision was made in the absence of professional judgment." *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006).

In his Third Amended Complaint, Plaintiff makes allegations supporting both elements of a deliberate indifference claim against Dr. Gomez: (1) Plaintiff suffers from mental illness, including ADHD, for which he requires medical treatment; and (2) he "notified [Dr.] Gomez that he was feeling suicidal along with other ill effects associated with his lack of medication" and "pleaded with [Dr.] Gomez that he needed help in obtaining his psychotic medication," but Dr. Gomez did nothing. [33] at 3, 6. Defendants cite no case law suggesting that these or similar allegations "do not rise to the level of stating a constitutional violation." [36] at 3. Accordingly, Defendants' motion to dismiss Dr. Gomez is denied.

### B. Dr. Howard

Defendants argue that the Third Amended Complaint's allegations against Dr. Howard "establish that he was not deliberately indifferent" to Plaintiff's serious medical needs, because Plaintiff admits that Dr. Howard prescribed him with half the dosage of medicine which was

necessary to treat his ADHD. [36] at 3. Defendants also argue that the Third Amended Complaint is deficient because Plaintiff has not offered "any factual basis" for his allegation that Dr. Howard prescribed only half the dose necessary to treat his condition, due to CCDOC's shortage of medication. Defendants cite no legal authority in support of their arguments.

The Court concludes that the Third Amended Complaint states a claim against Dr. Howard for deliberate indifference. Plaintiff alleges that Dr. Howard knew based on his background, education, experience, and Plaintiff's medical history that the dosage of Straterra that he prescribed was inadequate, but prescribed the insufficient dose due to drug shortages at the correctional facility. These allegations suggest that Dr. Howard's treatment decision was "made in the absence of professional judgment" and are sufficient to state a claim. *Johnson*, 433 F.3d at 1013. Contrary to Defendants' unsupported argument, Plaintiff was not required plead specific facts demonstrating that the dose he received was not therapeutic or that CCDOC had a medication shortage. [36] at 3-4. The Third Amended Complaint, taken as a whole, provide Defendants with fair notice of what the deliberate indifference claim against Dr. Howard "is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93.

### C. Due Process and State-Created Danger Claims

Defendants argue that Plaintiff's Due Process and state-created danger claims "are not plausible," because Plaintiff does not plead any facts showing that Defendants knew that Plaintiff was at an unusual risk of harm due to his alleged mental illness. [36] at 4. Defendants also argue that the state-created danger claim is "confusing" because "Plaintiff asserts that the failure to release Plaintiff while his criminal charges were pending . . . was somehow actionable." *Id.*

These unsupported arguments do not convince the Court that Plaintiff's substantive due process claim should be dismissed as the pleading stage. As a "general principle," the Due

9

Process Clause "limits the state's power to act, but does not act 'as a guarantee of certain minimal levels of safety and security.'" *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989)). However, there are two recognized exceptions to this principle, which grew out of the Supreme Court's decision in *DeShaney*. The first is the "special relationship" exception, which recognizes that "[w]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 199-200; see also *D.S.*, 799 F.3d at 798; *Monfils v. Taylor*, 165 F.3d 511, 516 (7th Cir. 1998). "The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.,* food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause." *DeShaney*, 489 U.S. at 200. The second exception is the "state-created danger exception," which imposes liability "when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced." *Monfils*, 165 F.3d at 516. To state a Fifth Amendment claim for state-created danger, a plaintiff must allege that: (1) the state, by its *affirmative acts*, created or increased a danger that the plaintiff faced; (2) that the state's failure to protect the plaintiff from danger was the proximate cause of the plaintiff's injury; and (3) that the state's failure to protect the plaintiff shocks the conscience. *D.S.*, 799 F.3d at 798.

In this case, Plaintiff labels his substantive due process claim a "state-created danger" claim. See [33] at 8. However, the pleadings do not support that type of substantive due process

10

claim because Plaintiff has not identified any "affirmative acts" that Defendants took to create or increase a danger to Plaintiff. *D.S.*, 799 F.3d at 798. Instead, Plaintiff alleges that it was Defendants' failures to act that placed him in harm's way. Nonetheless, Plaintiff's allegations that Defendants restrained his liberty by incarcerating him, and at the same time failed to provide him with necessary medical care, are sufficient to state a substantive due process "failure to protect" claim. See *DeShaney*, 489 U.S. at 200. Therefore, the Court denies Defendants motion to dismiss Counts I and II of the Third Amended Complaint.

### D. Fourth Amendment Claim

Defendants argue, without citation to legal support, that Plaintiff's Fourth Amendment claim must be dismissed because "Plaintiff was in custody at all times relevant to his complaint and his allegations relate exclusively to conditions during his incarceration, not an arrest, and thus there is no basis for a Fourth Amendment claim for unreasonable seizure." [36] at 5.

This argument is without merit. As Plaintiff correctly explains, a pretrial detainee's conditions of confinement between his arrest and his preliminary probable cause hearing must be analyzed under the Fourth Amendment, using the objectively unreasonable standard, rather than under the Eighth Amendment, using the deliberate indifference standard. *Lopez v. City of Chicago*, 464 F.3d 711, 718 (7th Cir. 2006). The Third Amended Complaint alleges that "Defendants unreasonably seized Plaintiff, a pretrial detainee, by subjecting him to cruel and unusual punishment by denying or inadequately administering Plaintiff's medicine prior to a finding of probable cause." [33] at 9. These allegations are sufficient to state a Fourth Amendment claim. Although the Third Amended Complaint does not allege specifically when Plaintiff received a probable cause hearing, Plaintiff alleges that he was denied appropriate medical treatment from the beginning of his incarceration until his suicide attempt. These

allegations are sufficient to give Defendants fair notice of the basis of his claims. *Twombly*, 550 U.S. at 555.

E. *Monell* **Claim**

Defendants argue that the *Monell* claim against the County and Sheriff Dart are subject to dismissal for four reasons. First, Defendants argue that Plaintiff's *Monell* claim must be dismissed because the Third Amended Complaint's "allegations pertain exclusively to [Plaintiff's] experiences, not of a widespread custom or practice." [36] at 6. Second, and in seeming contradiction to their first argument, Defendants argue that Plaintiff's allegations of a widespread policy or custom are too conclusory to state a *Monell* claim. The Court rejects both arguments, because the Third Amended Complaint clearly complains of CCDOC practices that affect all inmates who are in need of medical care, including (1) providing inadequate health assessments and failing to take individual health histories; (2) failing to keep proper records; (3) failing to provide adequate staffing and training; (4) denying inmates meaningful access to health professionals; and (5) providing inadequate acute and chronic care to inmates. See [33] at 7, 9-10. While Plaintiff could have fleshed out his *Monell* claim with more detailed allegations, he was not required to, as his allegations provide Defendants with fair notice of the basis of his claims. *Twombly*, 550 U.S. at 555.

Defendants' third argument is that Plaintiff fails to allege that the CCDOC policies and practices about which he complaints were the "moving force behind" Plaintiff's injury. [36] at 8. "Under *Monell*, a local governmental entity is liable for damages only if a plaintiff can show that the alleged constitutional violation occurred as a result of an official policy, custom, or practice." *Clemons v. Dart*, 2016 WL 890697, at *9 (N.D. Ill. Mar. 9, 2016). Thus, *Monell* "requires a plaintiff suing a municipality or comparable entity to demonstrate that the entity's official policy,

widespread custom, or action by an official with policy-making authority was the 'moving force' behind his constitutional injury." *Dixon v. Cty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016). A widespread custom may be demonstrated with evidence of "systemic and gross deficiencies in staffing, facilities, equipment, or procedures in a detention center's medical care system" if "a policy-making official knows about them and fails to correct them." *Id.* The Court concludes that the Third Amended Complaint, taken as a whole, adequately alleges that CCDOC's policies and practices were the moving force behind Plaintiff's injury. While Plaintiff does not tie particular actions to particular policies, he alleges generally that Defendants "acted pursuant to one or more . . . interrelated informal policies" and then lists those policies, including an alleged policy of not maintaining proper medical records for inmates. [33] at 9-10. The Seventh Circuit has recognized that such an "implicit policy or a gap in expressed policies" can form the basis of a *Monell* claim. *Dixon*, 819 F.3d at 343 (quotation marks and citation omitted) (fact issue as to whether systemic and gross deficiency in facility's medical records system was moving force behind detainee's injuries precluded summary judgment on *Monell* claim).

Fourth, Defendants argue that Dr. Gomez and Dr. Howard must be dismissed from the *Monell* claim because they are not policymakers and thus they cannot be held liable in their official capacities for a *Monell* violation. The Court finds it unnecessary to consider the substance of this argument, because Plaintiff's *Monell* claim is brought against Cook County and Sheriff Dart, not against the doctors. See [33] at 9.

### F. IIED Claim

Defendants argue that Plaintiff's IIED claim must be dismissed because IIED claims must be brought within one year and "[t]he allegations in this complaint begin in 2010 and therefore there is no way to determine if this claim has been timely made." [36] at 8. The Court

13

agrees with Plaintiff that this argument is baseless, because the Third Amended Complaint clearly alleges that it is based on events that occurred beginning in 2014—the same year that Plaintiff filed his complaint. See [33] at 4; [1]. Moreover, Plaintiff had no duty anticipate Defendants' statute of limitations argument in his pleadings; typically, "the resolution of the statute of limitations comes after the complaint stage." *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004).

Finally, Defendants argue that the IIED claim should be dismissed because, "[e]ven accepting Plaintiff's allegation that Defendants ignored Plaintiff's medical needs, that would not rise to the level of 'extreme and outrageous.'" [36] at 8-9. Defendants offer no legal support for their argument, and the Court's quick research indicates that allegations of deliberate indifference may also support an IIED claim. See *Taylor v. Wexford Health Sources, Inc.*, 2016 WL 3227310, at *6 (N.D. Ill. June 13, 2016) (listing cases); see also *Dixon*, 819 F.3d at 351. Therefore, the Court denies Defendants' motion to dismiss the IIED claim.

**IV.     Conclusion**

For these reasons, the Court denies Defendants' motion [36] to dismiss Plaintiff's Third Amended Complaint.  In addition, the Court orders Plaintiff's counsel to serve the Third Amended Complaint on (or seek waivers of service from) the remaining defendants (C/O McMunes, Cermak Health Services, Nurse Dunmares, Nurse Pulvirenti, and Unknown County Cermak Health Personnel) no later than October 31, 2016, or the claims against those defendants will be dismissed without prejudice.  See Fed. R. Civ. P. 4(m).  This matter is set for status on November 15, 2016 at 9:15 a.m.


Dated: September 22, 2016               _____
                                        Robert M. Dow, Jr.
                                        United States District Judge